UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ANDREW SANCHEZ,

                Petitioner,

        -against-

UNITED STATES OF AMERICA,

                Respondent.
-------------------------------------------------------x

ORDER

10-CR-392-16 (CS)
21-CV-1147 (CS)

Seibel, J.

      On February 3, 2021, Petitioner Andrew Sanchez filed a petition under 28 U.S.C. § 2255. (Doc. 1229 ("Pet.").)[1]  I ordered the Government to respond on the issue of timeliness, (Doc. 1231), which it did on March 18, 2021, (Doc. 1235).  Petitioner replied on April 19, 2021. (Doc. 1251.)

      A federal prisoner seeking relief under § 2255 generally must file the motion within one year from the latest of four benchmark dates:  (1) when the judgment of conviction becomes final; (2) when a government-created impediment to making such a motion is removed; (3) when the right asserted is initially recognized by the Supreme Court, if that right has been made retroactively available to cases on collateral review; or (4) when the facts supporting the claim(s) could have been discovered through the exercise of due diligence.  *See* 28 U.S.C. § 2255(f). Equitable tolling may be available to excuse an untimely petition, but only where "the petitioner shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

---

[1] Docket references are to No. 10-CR-392.

1

circumstance stood in his way and prevented timely filing." *Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir. 2012) (cleaned up). If the requirements for neither § 2255(f) nor equitable tolling are met, Petitioner's claim may be heard only if he shows he is actually innocent. *See United States v. Flower*, No. 14-CR-108, 2019 WL 5957883, at *5 (D. Vt. May 23, 2019) ("Given that Flower's Motion is barred by the statute of limitations set forth in 28 U.S.C. § 2255(f)(1)-(4), to obtain relief she must establish that she is either actually innocent of her conviction or that she is entitled to equitable tolling of the statute of limitations."); *United States v. Torres*, No. 11-CR-389, 2017 WL 78513, at *2 (S.D.N.Y. Jan. 9, 2017) (referring to "the actual innocence gateway through [the] statute of limitations" of the Antiterrorism and Effective Death Penalty Act).[2]

      The Judgment in Petitioner's case was entered on March 19, 2012. (Doc. 426.) Because he did not appeal (consistent with his plea agreement), that conviction became final on April 2, 2012. *See United States v. Wright*, 945 F.3d 677, 683 (2d Cir. 2019) (conviction becomes final fourteen days after entry of judgment if no appeal filed, and time to file *habeas* petition runs one year later), *cert. denied*, 140 S. Ct. 1234 (2020); *see also* Fed. R. App. P. 4(b)(1) (allowing fourteen days to file notice of appeal from judgment of conviction). Petitioner's time to file under § 2255 thus ran on April 2, 2013, under § 2255(f)(1), unless one of the other provisions of § 2255(f) applies. Petitioner does not suggest that any of them do, and his claims, which rely on well settled law and facts of which he was aware at the time of his conviction, plainly do not fall within §§ 2255(f)(2)-(4).

---

[2] The Court will send Petitioner copies of all unpublished decisions cited in this Order.

The petition is thus untimely under § 2255(f). I next consider whether equitable tolling might excuse the untimely filing. As noted, "equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). "Equitable tolling applies only in rare and exceptional circumstances." *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000) (cleaned up). "The threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Lombardo v. United States*, 860 F.3d 547, 551 (7th Cir. 2017) (cleaned up).

> The word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.

*Valverde*, 224 F.3d at 134. Thus, even if there are extraordinary circumstances, "the link of causation between the extraordinary circumstances and the failure to file is broken" if the petitioner seeking equitable tolling has not exercised reasonable diligence. *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (cleaned up). The court "examines the petitioner's diligence not only during the time he seeks to have equitably tolled but also during the time up to and including the date of filing." *Adkins v. Warden*, 585 F. Supp. 2d 286, 300 (D. Conn. 2008).

Petitioner argues that his IQ of 87, illiteracy and inability to understand his rights prevented him from timely filing. While mental illness or mental incompetence can conceivably support equitable tolling, the "burden of demonstrating the appropriateness of equitable tolling for mental illness lies with the plaintiff; in order to carry this burden, she must offer a particularized description of how her condition adversely affected her capacity to function

3

generally or in relationship to the pursuit of her rights." *Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010) (cleaned up).   Petitioner does not do so here.

Petitioner's allegations regarding his incompetence "are conclusory and lacking in any detail or evidentiary support."   *Samo v. Keyser*, 305 F. Supp. 3d 551, 557 (S.D.N.Y. 2018), *report and recommendation adopted*, No. 17-CV-5043, 2018 WL 4565143 (S.D.N.Y. Sept. 21, 2018), *certificate of appealability denied*, No. 18-2985, 2019 WL 1531762 (2d Cir. Feb. 21, 2019).[3]   He has submitted no documentation or other evidence to "substantiate his claim that he was suffering from a mental illness or mental deficiency that severely impaired his ability to comply with the statutory deadline, despite his diligent efforts to comply with that deadline." *Green v. Sheehan*, No. 12-CV-665, 2014 WL 338832, at *4 (W.D.N.Y. Jan. 30, 2014).   He has thus not shown "that he was effectively prohibited him from seeking legal redress due to his low I.Q. or difficulties in reading and writing."   *Id.* at *6.

In addition, Petitioner's assertions of disability "are belied to some degree by the record." *Samo*, 305 F. Supp. 3d at 557.   An IQ of 87 is below average but hardly indicates incompetence. *See Mugan v. Hartford Life Grp. Ins. Co.*, 765 F. Supp. 2d 359, 366 n.4 (S.D.N.Y. 2011) (IQ of 80-89 is in low-average category).   Further, at his plea the Court, the prosecutor and defense counsel all assessed Petitioner as competent.   (Doc. 1235-1 ("Plea Tr.") at 6-7.)   Moreover, while Petitioner indicated at the plea that he had trouble reading, (*id.* at 4), he stated at his

---

[3] Petitioner notes that his lawyer stated at sentencing that Petitioner's intellectual limitations made him unable, for a time, to grasp the concepts of constructive possession or *Pinkerton* liability.   (*See* Doc. 1235-2 ("Sent. Tr.") at 9-11.)   As many defendants and even some lawyers wrestle with understanding these concepts, this does not show a severe impairment.   Nor would difficulty in comprehending complex legal theories translate into an inability to understand a simple one-year deadline.

4

sentencing that he had written a statement that he wanted to read, and he then read it to the Court, (Sent. Tr. at 15-16).   Finally, Petitioner was able to make various submissions to the Court, (*see* Docs. 896, 1172, 1183), and ultimately to file the instant petition.   The Court does not doubt that Petitioner struggles with impairments, but they do not appear to be as severe or debilitating as he suggests.

Even assuming Petitioner is of very low intelligence and illiterate, "courts have in general found [low intelligence] and similar conditions insufficient to constitute extraordinary circumstances."   *Green*, 2014 WL 338832, at *6 (collecting cases); *see Perez v. Royce*, No. 20-CV-601, 2020 WL 1975244, at *3 (E.D.N.Y. Apr. 24, 2020) (illiteracy, lack of education, unawareness of and unfamiliarity with legal requirements, and lack of legal advice or assistance do not suffice for equitable tolling) (collecting cases); *Samo*, 305 F. Supp. 3d at 557 (lack of education and illiteracy do not suffice for extraordinary circumstances); *Guzman v. United States*, No. 13-CV-5742, 2014 WL 3950673, at *2 (S.D.N.Y. Aug. 13, 2014) ("well settled that problems of literacy and language do not constitute 'exceptional circumstances' in [§ 2255] context"); *Ortiz v. United States*, No. 12-CV-5236, 2013 WL 308681, at *2 (E.D.N.Y. Jan. 25, 2013) (*pro se* status and ignorance of the law are commonplace factors that do not rise to extraordinary level necessary to justify equitable tolling) (collecting cases); *Marte v. Brown*, No. 09-CV-1036, 2010 WL 1644271, at *3 (S.D.N.Y. Apr. 20, 2010) ("Courts have rejected lack of access to legal services, illiteracy, lack of English fluency, and ignorance of the law as extraordinary circumstances that effectively prohibit a petitioner from pursuing habeas relief.") (cleaned up).

Further, a party seeking equitable tolling must show not only "that extraordinary circumstances prevented him from filing his petition on time," but also that he "acted with reasonable diligence throughout the period he seeks to toll." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *see Collins v. Artus,* 496 F. Supp. 2d 305, 313-14 (S.D.N.Y. 2007) ("the party must show that he was unable to pursue his legal rights during the entire period that he seeks to toll"). This burden is particularly high here, given that the Petition was filed almost eight years too late. *See Cross v. McGinnis,* No. 05-CV-504, 2006 WL 1788955, at *4 (S.D.N.Y. June 28, 2006) ("Given the seven-and-a-half years which Cross seeks to toll, his burden to show . . . that he acted with reasonable diligence throughout this period is extremely high."); *Mateos v. West*, 357 F. Supp. 2d 572, 577 (E.D.N.Y. 2005) ("[A]s the petitioner seeks to equitably toll 1,318 days of the limitations period, the petitioner's burden to demonstrate he acted with reasonable diligence throughout this entire period is particularly high."). Not only has Petitioner made no effort to show that he acted diligently, but the fact that (as noted), he made other submissions to the Court between his conviction becoming final and his submission of the instant Petition shows that he cannot demonstrate diligence during the entire period.

In short, the factors to which Petitioner points do not, individually or collectively, rise to the level necessary to excuse his failure to file his petition within the one-year limitations period.

Finally, Petitioner suggests that he is actually innocent of the charge under 18 U.S.C. § 924(c).[4] "The Supreme Court has made clear that the actual innocence exception is very narrow and is concerned with actual as compared to legal innocence. The exception, therefore, does not apply where the petitioner merely makes a legal argument." *Darby v. United States*, 508 F.

---

[4] Petitioner does not suggest he is innocent of the narcotics conspiracy count.

6

App'x 69, 71 (2d Cir. 2013) (cleaned up).   "'Actual innocence' means factual innocence, not mere legal insufficiency."   *Bousley v. United States*, 523 U.S. 614, 623 (1998) (cleaned up).

Petitioner alleges that he is innocent of the firearms charge because he did not hold or use a weapon, but it is well settled that under the theory known as *Pinkerton* liability, a defendant may be "guilty of a substantive offense that he did not personally commit if it was committed by a coconspirator in furtherance of the conspiracy, and if commission of that offense was a reasonably foreseeable consequence of the conspiratorial agreement."   *United States v. McCoy*, 995 F.3d 32, 63 (2d Cir. 2021).   This theory of liability applies "in connection with a charged violation of § 924(c)."   *United States v. Masotto*, 73 F.3d 1233, 1240 (2d Cir. 1996).   At his plea, Petitioner allocuted that he sold crack as part of an agreement with others, (Plea Tr. at 19-21), and that while he never held a firearm personally, he knew that guns were stored nearby, that the guns were available to him, that the purpose of keeping the guns nearby was for use if necessary to protect the drugs and the conspirators' territory, that that was part of his understanding with his co-conspirators, and that he was aware that other members of the conspiracy used the guns for that purpose on occasion., (*id*. at 21-23).   These admissions – on which the Court may rely, *see United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (*per curiam*) (district court entitled to rely upon defendant's sworn statements in open court that contradicted claim); *Salerno v. Berbary*, 389 F. Supp. 2d 480, 484-85 (W.D.N.Y. 2005) (rejecting *habeas* challenge where allegations were contradicted by Petitioner's sworn statements at plea; "[a] trial court may fairly rely upon a [petitioner's] sworn statements made in open court") – meet all the requirements for *Pinkerton* liability and thus belie any claim of actual

innocence.  Accordingly, the actual-innocence gateway around § 2255(f) is not available to Petitioner.

For the reasons stated above, the petition is DISMISSED.  The Clerk of Court is respectfully directed to:   1) docket this Order in both of the above-captioned cases; 2) terminate Doc. 1229 in No. 10-CR-392; 3) close No. 21-CV-1147; and 4) send a copy of this Order to Andrew Sanchez, No. 88359-054, USP Hazelton, U.S. Penitentiary, P.O. Box 2000, Bruceton Mills, WV  26525.   As the Petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.   28 U.S.C. § 2253; *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).

SO ORDERED.

Dated: June 17, 2021
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.